UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMPRESSOR ENGINEERING
CORPORATION,

        Plaintiff,

                                  Case number: 10-10059

v.

                                    Paul D. Borman
                                    United States District Judge

CHARLES J. THOMAS, JR.,

        Defendant.
_____/

OPINION AND ORDER:
(1) GRANTING PLAINTIFF'S MOTION TO CERTIFY A CLASS AND APPOINTING
CLASS COUNSEL (ECF NO. 82);
(2) GRANTING PLAINTIFF'S MOTIONS FOR LEAVE TO FILE SUPPLEMENTAL CASE
AUTHORITY (ECF NOS. 92, 99, 110); AND
(3) DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL
LEGAL MEMORANDUM (ECF NO. 96)

Before the Court is Plaintiff Compressor Engineering Corp.'s Motion to Certify a Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). (ECF No. 82.) Defendant Charles J. Thomas, Jr. ("Thomas") filed its response and Plaintiff thereafter filed a reply. (ECF Nos. 85 & 90).

Thereafter, Plaintiff filed an unopposed motion for leave to file recent Sixth Circuit case authority (ECF No. 92), a second Motion for Leave to file supplemental authority (ECF No. 99), and a third Motion for leave to file Supplemental Authority (ECF No. 110). Defendant Thomas filed a Supplemental Legal Memorandum (ECF No. 96) to which Plaintiff filed a response (ECF No. 97) and Defendant Thomas thereafter filed a reply (ECF No. 98). A hearing on these matters was held on May 28, 2015.

Thereafter, on July 1, 2015, Defendant filed a motion to stay the proceedings (ECF No. 111.)  On October 12, 2015, Defendant filed a Motion to Dismiss pursuant to 12(b)(1) or in the Alterative Stay the Proceedings.  (ECF No. 116.)  On February 3, 2016, this Court denied Defendant's initial motion to stay, and denied Defendant's motion to dismiss, but granted Defendant's request to stay this action pending the Supreme Court's decision in *Robins v. Spokeo, Inc*., 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S.Ct. 1892 (2015).  More recently, on October 27, 2016, the Court lifted the stay in this action and granted Defendant's motion for leave to file a second supplemental memorandum in opposition to Plaintiff's Motion for Class Certification.  (ECF No. 127.)  Defendant filed his Supplemental brief on October 27, 2016 and Plaintiff's filed its Supplemental Response on November 17, 2016. (ECF No. 129.)

For the reasons set forth below, the Court will GRANT Plaintiff's motion for class certification, grant Plaintiff's motions to file supplemental case authority, and deny Defendant's motion for leave to file a supplemental legal memorandum.

## I. BACKGROUND

A.      Procedural History

This Court addressed the procedural history of this case in an earlier Opinion an Order and incorporates it here:

> On January 6, 2010, Plaintiff filed the instant class action complaint under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 as amended by the Junk Fax Prevention Act of 2005[1] against Defendants Chicken Shack, Inc., Chicken Shack Depot, Inc., and Charles Thomas, Jr.  (ECF No. 1).  On February 5, 2010, Defendant Thomas filed a motion to dismiss arguing the Court lacked subject matter jurisdiction over Plaintiff's TPCA claims.  (ECF No. 5).  Plaintiff

---

[1]  The facsimile at issue was sent on November 6, 2005.  This post-dates the amendment of the TCPA by the Junk Fax Prevention Act of 2005 that took effect on July 9, 2005.

2

then filed a Motion for Leave to File Amended Complaint. (ECF No. 8). On May 21, 2010, Magistrate Judge Virginia Morgan denied Plaintiff's motion to amend finding it was futile because the Court lacked subject matter jurisdiction. (ECF No. 14). On July 19, 2010, this Court dismissed the complaint holding that the Court lacked subject matter jurisdiction over the TCPA claims. (ECF No. 18). Plaintiff filed a notice of appeal on July 22, 2010. (ECF No. 21).

On May 17, 2011, the United States Court of Appeals for the Sixth Circuit entered an Order remanding this case for reconsideration in light of its recent decision, *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). (ECF No. 23). *EchoStar* held that federal district courts do have subject matter jurisdiction over TCPA claims.

Thereafter, on June 22, 2012, the Court entered an Opinion and Order that reopened this action in light of EchoStar and also ordered Plaintiff to show cause why Defendants Chicken Shack, Inc. and Chicken Shack Depot, Inc. should not be dismissed for lack of prosecution. (ECF No. 24.) The Order also required the parties file supplemental briefing on Defendant Thomas's motion to dismiss and Plaintiff's motion to amend. (*Id*.).

On August 15, 2013, this Court denied Defendant Thomas's motion to dismiss, granted Plaintiff's motion to correct the class description and denied Plaintiff's request to add certain parties as defendants. The Court also dismissed Chicken Shack, Inc. and Chicken Shack Depot, Inc. without prejudice leaving Defendant Thomas as the sole defendant. (ECF No. 43.) On September 5, 2013, Plaintiff filed its Amended Complaint. (ECF No. 46.)

Defendant Thomas sought certification of the Court's order denying his motion to dismiss and to stay the case pending appeal pursuant to Federal Rules of Civil Procedure 54(b) and 28 U.S.C. 1292(b). (ECF No. 50.) The Court affirmed the Magistrate Judge's order denying that motion on September 30, 2014. (ECF No. 105.) Defendant Thomas also sought to reassign this action alleging it was a companion to other cases before Judge Sean Cox in this District. That request was denied by the Court on September 25, 2014. (ECF No. 104.)

(ECF No. 108, at *1-3.)

In February 2015, the Court denied Defendant's Motion to Dismiss based on a lack of

jurisdiction, finding that Defendant's previous Offer of Judgment did not moot this action. (ECF

No. 108.) As noted above, this Court also denied Defendant's second Motion to Dismiss based

upon a second offer of judgment (ECF No. 119).

3

B.      Factual Background Regarding Junk Fax Cases

This is one of the numerous "junk fax" cases that have been filed by Plaintiff's attorneys in courts around the country involving facsimiles sent by the company "B2B."  Indeed, Judge Gerald Rosen set forth a succinct version of the common background facts in these cases which is relevant to this action:

> Anderson + Wanca and Bock & Hatch are two Chicago area firms that specialize in representing plaintiffs in case action lawsuits under the Telephone Consumer Protection Act as amended by the Junk Fax Prevention Act of 2005 (the "TCPA").  The TCPA authorizes $500.00 in statutory damages for faxing an unsolicited advertisement, and each transmission is a separate violation.  And the award triples upon a showing of wilfulness.  Because plaintiffs may enforce the statute via class action and because a single advertisement is often faxed to hundreds – if not thousands– of phone numbers, suits under the Act present lucrative opportunities for plaintiffs' firms.

> A woman named Caroline Abraham functioned as a modern-day "typhoid [M]ary" in the small business communities in which she operated.  As the Seventh Circuit explained [in Reliable Money Order, Inc. v. McKnight Sales Co., 704 F.3d 489 (7th Cir. 2013)], Abraham and her company, Business-to-Business Solutions ("B2B") sit at the center of this lawsuit and scores of others: B2B contracted with businesses to send advertisements via facsimile.  Advertisers would pay a fee, and B2B would send the ad to hundreds of fax numbers purchased from InfoUSA, Inc. (a practice known as "fax-blasting").  Abraham, B2B's sole employee, never obtained from the fax recipients['] permission to send them the advertisements.

> ***

> Anderson + Wanca came across B2B and Abraham while they were investigating four putative class actions in Illinois.  They learned that the defendants in those four cases had contracted with B2B to fax the offending advertisements.  Unsurprisingly, Caroline Abraham's B2B records became the focus of discovery.  Abraham ultimately produced spreadsheets in discovery that listed only the recipients of the advertisements at issue in the four cases.

> ***

> Flush with success, Anderson + Wanca recognized that the B2B hard drives and fax lists likely contained a treasure trove of potential clients for putative class

4

action lawsuits.  So, despite having all information necessary to certify the classes in the [original] Four Cases, Anderson + Wanca continued pushing Caroline Abraham to disclose all B2B fax transmission data.  Ryan Kelly, an attorney at Anderson + Wanca, met with Caroline Abraham and asked her for the actual backup disks and hard drive.  He told her that "nobody would look at anything on these media not related" to the Four Cases.  Indeed, Kelly even emailed Ms. Abraham a copy of the protective order filed in one of the Four Cases, explaining that it "will prevent [Kelly] from disclosing any of the back-up disks or hard-drive to any third-party."  To receive those protections, however, the producing party had to stamp documents confidential or notify plaintiff's counsel of their confidential nature at the time of production.  Ms. Abraham continued to resist.

Ultimately, plaintiff's counsel subpoenaed Joel Abraham to testify at a deposition. The subpoena also ordered Mr. Abraham to produce, at the time of his deposition, the back-up disks and hard drive.  Appearing at the deposition with attorney Eric Ruben, Joel Abraham produced the materials. Neither he nor Ruben, who had read the protective order, asserted confidentiality.  Even so, Anderson + Wanca later instructed defense counsel to "treat the DVD produced by Joel Abraham as confidential pursuant to the protective order[.]"

The back-up disks and hard drive revealed not only the recipients of fax advertisements sent by the defendants in the Four Cases but the names of other B2B clients as well.

Then, armed with data from B2B's electronic files, Plaintiff's counsel filed scores of putative class actions under the TCPA.  The B2B files provided a treasure trove of potential new clients for Anderson + Wanca, revealing the names of other potential defendants who contracted with B2B to send unsolicited fax advertising and listing the recipients of that advertising .... Anderson + Wanca attorneys have filed over one hundred putative class actions under the Act, all rooted in data recovered from the B2B disks and hard drive.

*Avio, Inc. v. Alfoccino, Inc.*, 18 F.Supp. 3d 882, 884-85 (E.D. Mich. 2014), *rev'd on other*

*grounds*, 792 F.3d 627 (6th Cir. 2015), (quoting *APB Assoc., Inc. v. Bronco's Saloon, Inc.*, 297

F.R.D. 302, 304-06 (E.D. Mich. 2013)[2] (which in turn relied upon *Reliable Money Order, Inc. v.*

*McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013)); *see also American Copper & Brass, Co. v.*

---

[2]  The *APB Associates* decision was consolidated with the decisions in *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 292 F.R.D. 433 (E.D. Mich. 2013) and *Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412 (E.D. Mich. 2013).

*Lake City Ind. Prods.*, 757 F.3d 540, 542 (6th Cir. 2014) (relying upon *McKnight* for background and description of the "practice of fax-blasting and noting that B2B was a notorious fax-blasting company.").

    C.    Pertinent Facts Regarding the Instant Action

In this particular fax-blasting action, Defendant hired a man, who was referred to him by another business owner to promote his restaurant businesses by fax advertisement. (ECF No. 82, Pl.'s Mot. to Certify, Ex. A, Thomas Dep. at 27-28, 31.) Defendant was eventually charged $338.00 by B2B for 10,000 fax advertisements. (*Id.* at 32-33, 70-72; *see* Ex. C, Lewis Decl. Ex. 2, B2B000004-05). Defendant also worked with B2B to create the advertisement. (Thomas Dep. at 51-56; Lewis Decl. Ex. 2, B2B000020-26.) Defendant was never provided a list of numbers or names and addresses of the persons to whom the faxes were going to be sent. (*Id.* at 37.) It is appears undisputed that B2B "created the target list [of business persons in Michigan] by culling relevant targets from a third-party database B2B had purchased from InfoUSA years earlier." (ECF No. 82, at *1-2; Ex. B, Abraham Decl. at ¶ 7.) Defendant did not recall asking any fax recipient for their permission or consent to send the fax advertisements. (Thomas Dep. at 41-42.) Indeed, Abraham stated that B2B did not obtain prior express permission or consent from the targeted companies before it would send the faxes. (Abraham Decl. ¶¶ 6-7.)

Plaintiff alleges in its Amended Complaint that it received a single unsolicited fax advertisement on its facsimile machine on approximately November 6, 2005. (Am. Compl. ¶ 12.) James Berwick, the president and owner of Plaintiff, testified that he did not recall receiving the fax that was sent on behalf of Defendant. (ECF No. 85, Def.'s Resp., Ex. D, Berwick Dep. at 11, 56.) Berwick also testified that he did not keep the original fax, does not

have the transmission log from his fax machine that allegedly received the fax at issue, and no longer has the fax machine either.  (*Id*. at 11-12, 56, 71.)

Plaintiff relies upon its expert, Robert Biggerstaff, to show that the archived computer data (mined from Abraham's hard drive and disks) evidences that Defendant's advertisement was successfully faxed 6,142 times to 6,138 persons.  (ECF No. 82, Ex. D, Jan. 19, 2010 Biggerstaff Report, at ¶ 15).  Specifically, B2B's "directory fax1" "log file... shows that 1,954 transmissions were successful and error-free transmissions of a 1-page fax" and B2B's "fax2" "log file ... shows that 4,188 transmissions were successful and error-free transmissions of a 1-page fax."  (*Id*. at ¶¶ 13, 14).  Plaintiff received a "successful error-free fax transmission to its fax machine at 313-491-2766 on November 6, 2005."  (*Id*. at Ex. 4, page 48, line 2229, Ex. 5, page 6, line 1279).

Plaintiff now seeks to certify a class with following description: "All persons who were sent one or more faxes on November 6, 2005 advertising 'Chicken Shack' restaurant as offering 'Michigan's Best Chicken and Ribs.'"[3]  (Pl.'s Mot. to Certify, at 11).  Defendant argues that the Motion for Class Certification must be denied because Plaintiff has failed to meet the prerequisites under Federal Rule of Civil Procedure 23, including *inter alia*: 1) Plaintiff and putative class claims are barred by the statute of limitations; 2) the proposed class counsel does not meet the requirements regarding the adequacy of class counsel; 3) Plaintiff fails to meet the adequacy requirements for class representative; 4) individual issues predominate over common issues of fact and law; 5) the proposed class definition is flawed because it includes persons who

_____

[3] This proposed class definition differs from the definition set forth in the Amended Complaint.

7

lack standing to assert a TCPA claim; and 6) that a class action is not a superior method for adjudicating these claims.

### III. LEGAL STANDARD

"A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850 (6th Cir. 2013) (citation omitted); *see also In re Am. Medical Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996). Yet, it bears repeating that "[t]he class action is 'an exception to the usual rule that litigation is conducted by an on behalf of the individual named parties only.'" *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 537 (6th Cir. 2012) (quoting *Wal-Mart v. Dukes*, --- U.S. --- , 131 S.Ct. 2541, 2550 (2011)). Moreover, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.." *Wal-Mart*, 131 S.Ct. at 2551 (emphasis in original); *In re Am. Med. Sys*., 75 F.3d at 1079 (noting the party seeking certification bears the burden in showing all prerequisites under Rule 23 are satisfied).

To obtain class certification pursuant to Rule 23 "the plaintiffs must show that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool*, 722 F.3d at 850 (quoting FED. R. CIV. P. 23(a)). "These four requirements – numerosity, commonality, typicality, and adequate representation – serve to limit class claims to those that are fairly encompassed within the claims

of the named plaintiffs because class representatives must share the same interests and injury as the class members. *Id*. at 850-51 (citing *Wal-Mart*, 131 S. Ct. at 2550). When reviewing a plaintiff's motion for class certification, the district court must conduct a "rigorous analysis" of the Rule 23 requirements. *In re Am. Med. Sys*., 75 F.3d at 1078-79 (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160).

In addition to meeting the four prerequisites of Rule 23(a), the proposed class must meet at least one of the three requirements set forth in Rule 23(b). *Wal-Mart*, 131 S.Ct. at 2548 (2011). In the present action, Plaintiff seeks class certification under Rule 23(b)(3), which requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Plaintiff bears the burden to show that all of the class certification prerequisites have been met. *In re Whirlpool*, 722 F.3d at 851 (citation omitted).

## IV. ANALYSIS

As an initial matter, the Court notes that Plaintiff previously filed three motions to file supplemental case authority (ECF Nos. 92, 99 & 110). Defendant also filed a Motion for Leave to file a Supplemental Legal Memorandum. (ECF No. 96.) As the Court explained on the record during the hearing on this matter, the Court accepts Plaintiff's supplemental case authority providing pertinent case law citations, and denies Defendant's motion to supplement its legal argument. More recently, in its Order lifting the stay in this action, the Court granted Defendant's motion to file a second Supplemental Memorandum and allowed Plaintiff to file a Supplemental Response. (ECF Nos. 127, 128 & 129.)

A.     Statute of Limitations

In its Second Supplemental Memorandum, Defendant argues that the Court should deny Plaintiff's motion for class certification because Plaintiff's claims and those of the proposed class are time barred.  (ECF No. 128, at *4-11.)

This Court previously examined the issue of whether these claims were time barred and whether the statute of limitations was tolled in its August 15, 2013, Opinion and Order denying Defendant's motion to dismiss.  (*See* ECF No. 43.)  The Court noted that the "basis" for Plaintiff's claim occurred on November 6, 2005 more than four years before Plaintiff filed the present action on January 6, 2010, and was therefore outside the applicable statute of limitations. (ECF No. 43, at *8.)  Plaintiff's counsel, however, had previously filed a different class action complaint against Defendant Thomas in Wayne County Circuit Court on June 29, 2009, *Central Alarm Signal, Inc. v. Chicken Shack, Inc., et al.*, No. 09-015989 ("*Central Alarm*").  (*Id.*, at * 4.) That state action was filed within the four year statute of limitations applicable to Plaintiff's TCPA claim.  (*Id.*, at *9.)  Similar to the present action, *Central Alarm* alleged a class action violation of the TCPA against Defendant Thomas, as well as Chicken Shack, Inc. and Chicken Shack Depot, Inc.  (*Id.* at *4.)  The *Central Alarm* case was voluntarily dismissed with prejudice on November 19, 2009.  (*Id.*)

In denying Defendant's motion to dismiss, this Court held that Plaintiff was a putative member of the class in *Central Alarm* and thus the statute of limitations was tolled during the pendency of the *Central Alarm* case.  (*Id.*, at *8-9, citing *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552 (1974); *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).)  This Court also determined that the statute of limitations had been tolled for both Plaintiff's individual

10

TCPA claim as well as the class action claim. (*Id.*, at *10, citing *In re Vertue, Inc. Marketing and Sales Practices Litigation*, 719 F.3d 474, 479-80 (6th Cir. 2013)).

In his Second Supplemental Memorandum, Defendant recognizes that filing of a class action tolls the running of the four year statute of limitations for all members of the putative class action "who would have been parties had the suit been permitted to continue as a class action." *American Pipe*, 414 U.S. at 552; *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). Defendant now argues, however, that in the present action the statute of limitations was not tolled by the filing of the *Central Alarm* complaint because that proposed class did not include the Plaintiff of the currently proposed class.

The class definition as defined in *Central Alarm* was:

> All persons who (1) on or after four years prior to the filing of this action (2) were sent telephone facsimile messages of material advertising the commercial availability of goods or services by or on behalf of Defendants (2) with respect to whom Defendants cannot provide evidence of prior express permission or invitation for the sending of such faxes, and (4) with whom Defendants did not have an established business relationship.

(ECF No. 128, Ex. C, Central Alarm Comp., at ¶ 15, Ex. A (subject fax))  Defendant claims that this definition did not include persons who were sent the fax that Plaintiff or Central Alarm attached to their complaints (Exhibit A) because that document only advertised the goods and services of South Shack I and South Shack II (which are solely owned and operated by Defendant) and not the "goods and services" of Chicken Shack, Inc., Chicken Shack Depot, Inc. or Defendant.  (Thomas Dep., at 8-10, 51-55.)  Defendant also contends that the class definitions in this action erroneously defined the class in reference to a document advertising "the goods or

services" of the individual Defendant Thomas which would not include Exhibit A.[4]

The Court finds Defendant's argument unpersuasive. It is clear that the class definition as alleged in *Central Alarm* included persons sent facsimile messages advertising the availability "of goods or services *by or on behalf of Defendants*." (Central Alarm Comp., at ¶ 15.) Accordingly, the class included persons sent such facsimiles *on behalf of* Defendant Thomas. Stated another way, the *Central Alarm* complaint did not define the facsimile to be limited to advertising the specific "goods and services" *of* a particular defendant. Further, the class definitions in the original complaint and the Amended Complaint both explicitly refer and attach the same facsimile as Exhibit A as the facsimile attached to *Central Alarm* and make clear that the class included all to whom were sent that particular facsimile. (*Cf. Central Alarm* Compl., ¶¶ 11, 13, 15, Ex. A; ECF No. 1, ¶¶ 10, 12, Ex. A; ECF No. 46, ¶ 12, 14, Ex. A.) Consistent with those class definitions, Plaintiff's proposed class definition in its motion for class certification refers directly to the language used in the facsimile attached to the *Central Alarm* complaint, the original and the operative Amended Complaint in this action: "All persons who were sent one or

---

[4] The original complaint in this action alleged the following class definition:

All persons that are holders of telephone numbers to which a facsimile transmission was sent on behalf of Defendants advertising or promoting the goods or services of Defendants at any time between four years prior to the filing of this suit to and including the present.

(ECF No. 1, at ¶14.) The Amended Complaint in this action alleged a class consisting of the following persons:

All persons that are holders of telephone numbers to which a facsimile transmission was sent on behalf of Defendant advertising or promoting the goods or services of Defendant at any time from August 13, 2005 to present.

(ECF No. 46, at ¶ 16.)

more faxes on November 6, 2005 advertising "Chicken Shack" restaurant as offering "Michigan's Best Chicken and Ribs."  (ECF No. 82, at *1).  Accordingly, the Court finds that the class alleged in the *Central Alarm* complaint is consistent with and included the classes alleged in the original and Amended Complaints in this action and the class proposed in the Motion for Class Certification.  Further, Defendant Thomas is the sole owner of the establishments advertised in the facsimile attached to the *Central Alarm* complaint as well as Exhibit A to the original complaint and Amended Complaint in this action. (*See* Thomas Dep., at 8-10, 51-55.)  Accordingly, it is arguable that the facsimile attached to all the complaints as Exhibit A does refer to Defendant Thomas's "goods and services."

For all these reasons, the Court concludes that Plaintiff's claims are not time barred because the *Central Alarm* complaint included Plaintiff and the members of the currently proposed class and thus the statute of limitations was tolled pursuant to *American Pipe* and *Crown Cork*.

   B.      Class Definition and Ascertainability of the Class

"[B]efore a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'"  *Young*, 693 F.3d 532, 537-38 (citation omitted).  In evaluating this "ascertainability" requirement, the Sixth Circuit has indicated that class definitions which are "amorphous" or "imprecise" do not meet this standard.  *Id* at 537-38 (citation omitted); *see also Avio, Inc. v. Alfoccino, Inc.* (*Avio II*), 311 F.R.D. 434, 441 (E.D. Mich. 2015) (granting class certification); *see also John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (holding that "[t]he existence of an ascertainable class of persons

13

to be represented by the proposed class representative is an implied prerequisite of the Federal Rule of Civil Procedure 23.).  Further, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.  In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective for proper inclusion in a class definition."  *Young*, at 538-39 (citation omitted).

In the present action, as noted *supra*, Plaintiff seeks to certify a class with the following description: "All persons who were sent one or more faxes on November 6, 2005 advertising 'Chicken Shack' restaurant as offering 'Michigan's Best Chicken and Ribs.'"  (ECF No. 82, at *11.)  Defendant argues, however, that the class definition is fatally flawed because the court would need to delve into individualized determinations to ascertain the members of the class, specifically: (1) whether the class included persons or entities that no longer or never existed, such as dissolved corporations (*see* ECF No. 85, Ex. R, Dillard Aff., identifying non-existent companies); (2) whether the class included persons or entities that had a preexisting business relationship with Defendant; or (3) whether the class includes persons who lack standing under the TCPA or Article III.  (ECF No. 85, at *17-19.)  Additionally, in his second Supplemental Memorandum, Defendant argues that the faxes were not sent "on behalf" of Defendant because he only authorized sending faxes to three or four hundred persons in a seven to ten mile radius of his restaurants.  (ECF No. 128, at * 4, 15-16.)  Defendant concludes that the class definition proposed by Plaintiff is over-broad because it includes so many individuals who lack a claim against Defendant.  The Court addresses each argument below.

1.      Individual Determinations

As an initial matter, the Court notes that in July, 2014 the Sixth Circuit issued *American Copper & Brass, Inc. v. Lake City Industrial Products, Ind*., 757 F.3d 540 (6th Cir. 2014).  In *American Copper*, the Sixth Circuit upheld a district court's class certification and subsequent grant of summary judgment (in favor of plaintiffs) in a near identical B2B fax-blaster TCPA case.  In *American Copper*, the defendant relied upon *Machesney v. Lar-Bev of Howell, Inc*., 292 F.R.D. 412 (E.D. Mich. 2013) and argued that the class definition improperly named persons who may not have "received, noticed or printed the fax" or who were not the owners of the fax machines and therefore lacked standing under the TCPA.  *Id*. at 544.  The Sixth Circuit rejected this argument and explained:

> We are unpersuaded by *Machesney's* analysis of the TCPA.  For starters, the *Machesney* court had no reason to consider the legislative history of the TCPA at all.  The plain language of the statute prohibits the 'use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).  Because the language of the TCPA is clear, the district court in *Machesney* should not have waded into the legislative history. ... Recovery under the TCPA's private-right-of-action provision, moreover, is not premised on the ownership of a fax machine. *See* 47 U.S.C. § 227(b)(3); *see also Chapman v. Wagener Equities, Inc*., 747 F.3d 489, 492 (7th Cir. 2014) (holding that ownership of a fax machine is not a prerequisite for standing under the TCPA).

> And that is not the only error in *Machesney's* analysis of the TCPA.  The *Machesney* court's conclusion that the TCPA was "intended to address ... the cost of the paper and ink incurred by the owner of the fax machine," 292 F.R.D. at 427, is too narrow. .... unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipient's time and impede the free flow of commerce. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Even a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk." (emphasis in original) .... Accordingly, to the extent that Lake City relies on *Machesney* for the proposition that owners (and only owners) of fax machines have standing to sue under the TCPA, we reject Lake City's argument.

15

*American Copper*, 757 F.3d at 544-45 (some internal citation omitted).  In light of this case law, the Court rejects Defendant's argument that ownership of the fax machine or receipt of the fax is necessary to confer standing to sue under the TCPA.

Defendant also contends that the class is not ascertainable because it includes or might include businesses that no longer exist (or never existed).  First, to the extent that Defendant relies upon *Machesney v. Lar-Bev of Howell, Inc*., 292 F.R.D. 412 (E.D. Mich. 2013) to support his argument, that opinion and order was vacated upon reconsideration in light of the *American Copper* decision.  *See Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47 (E.D. Mich., 2016); *Am. Copper*, 757 F.3d at 545.  Further, the Sixth Circuit has indicated (although in dictum) that these exact fax records "are objective data satisfying the ascertainability requirement."  *Am. Copper*, 757 F.3d at 545; *see also Avio II*, 311 F.R.D. at 442 (noting that the Sixth Circuit "makes quite clear that the panel considered the class ascertainable based on the objective data contained in B2B's records – the very same record involved in *APB Associates* and this case.").

Further, Defendant himself has illustrated the "administrative feasibility" of the class definition and evidence at issue: Defendant has begun to sort through the fax numbers and determine whether the businesses continue to exist (*see* Ex. R).  Accordingly, the fax numbers constitute "objective criteria" the Court can use to determine class membership and such a determination is administratively feasible. *Young*, 693 F.3d at 537-38; *see also Chapman*, 747 F.3d at 492 (finding that "[h]ow many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.  Recipients of faxes who don't have rights under the Telephone Consumer Protection Act just wouldn't be entitled to share in the damages awarded to the class by a judgment or settlement.").

16

Defendant next argues that the class definition is unworkable based on the fact that the proposed class would include members that may have had an existing business relationship ("ERB") with Defendant. This argument is also easily dispatched. Defendant is correct that the TCPA allows a defendant to claim an ERB as a defense against a TCPA action, however, the statute provides that to establish such a defense a defendant must show 1) the unsolicited advertisement is from a sender with an ERB; 2) the sender received the number of the telephone facsimile through either a voluntary communication or directory to which the recipient agreed to make its number available; <u>and</u> 3) that the unsolicited advertisement contains an opt-out notice as described in the Act. 47 U.S.C. § 227(b)(1)(C)(i)-(iii) (emphasis added); *see also* 47 C.F.R. § 64.1200(a)(4)(i)-(iii); 47 U.S.C. § 227(b)(1)(D)(2) (describing the opt-out notice).

In the present case, it is undisputed that the unsolicited facsimile in question did not contain the required opt-out notice. (*See* ECF No. 82, Ex. C, Lewis Decl., Ex. 2, at B2B000005, 18-26; Thomas Dep. at 35-36, 51-56). As the Seventh Circuit has explained: "Even when the Act permits fax ads - as it does to persons who have consented to receive them, or to those who have established business relations with the sender - the fax must tell the recipient how to stop receiving future messages." *Ira Holtzman, C.P.A & Assocs. Ltd. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) (citing 47 U.S.C. § 227(b)(1)(C)(iii)); *see also Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 1:12-CV-0729, 2014 WL 7109630, *11 (W.D. Mich. Jan. 2015) (Jonker, J.) (discussing the defenses to the TCPA and noting "[t]he parties focus on the third requirement because even assuming the first two conditions are satisfied, there is no factual dispute regarding the absence of any opt-out language on the fax at issue in this case."); *City Select Auto Sales, Inc. v. David/Randall Assocs.* 96 F. Supp. 3d 403, 418-19 (D.N.J. 2015) (finding same).

17

Therefore, regardless of whether an ERB may have existed between Defendant and some of the class members, such a defense is defeated by the failure to have the proper opt-out notice (and the failure to include the proper opt-out notice is common to all potential class members).

2.    Standing

Defendant also argues in its response, and in its second Supplemental Memorandum, that Plaintiff's proposed class definition is flawed because Plaintiff and the proposed class cannot establish a "concrete particularized injury" as required under *Spokeo v. Robins*,  --- U.S. ---, 136 S.Ct. 1540 (2016), and thus lack standing.  (ECF No. 128, at 23.)   To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*., at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  In *Spokeo*, the Supreme Court held that to adequately plead an "injury in-fact" as required to have standing under Article III of the Constitution, a plaintiff must sufficiently allege an injury that is "both concrete and particularized."  *Spokeo*, 136 S.Ct. at 1544-45.  The Sixth Circuit recently summarized:

> [Courts] scrutinize the "injury-in-fact" element of standing in order to determine not just whether Plaintiffs have sufficiently pleaded a statutory injury, but a constitutional one as well.  As the Supreme Court recently affirmed in *Spokeo, Inc. v. Robins*, an injury-in-fact contains the two distinct elements of particularization and concreteness. 136 S. Ct. 1540, 1548-50 (2016). For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc*., 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury"). While "particularization is necessary to establish injury in fact[,] ... it is not sufficient."  *Spokeo*, 136 S. Ct. at 1548.  A plaintiff must also show that he suffered a concrete injury, defined as a "de facto" injury, meaning that the injury "must actually exist."  *Id*.

18

*Soehnlen v. Fleet Owners Ins. Fund*, No. 16-3124, --- F.3d. ---, 2016 WL 7383993, at *3 (6th

Cir. Dec. 21, 2016).  The Supreme Court recognized in *Spokeo*, however, that an injury may be

"intangible" and still be "concrete."  *Id*., at 1549.  The Supreme Court explained that a court

should look to whether the "alleged intangible harm has a close relationship to a harm that has

traditionally been regarded as providing a basis for a lawsuit" and recognized that "Congress

may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were

previously inadequate in law."  *Id*. (citations omitted).  The Supreme Court cautioned that a

"bare procedural violation, divorced from any concrete harm" would not suffice to meet the

injury-in-fact requirement but noted that "the risk of real harm" could satisfy the same.  *Id*.

Prior to *Spokeo*, in *Imhoff Investment v. Alfoccino, Inc*., 792 F.3d 627 (6th Cir. 2015) the

Sixth Circuit held that the TCPA was a statute that "confers new legal rights on a person, [and]

that person will have Article III standing to sue where the facts establish a concrete,

particularized, and personal injury to that person as a result of the violation of the newly created

rights."  *Id*., at 633 (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1251

(11th Cir. 2015)).  The Sixth Circuit recognized that, through the TCPA, Congress intended to

"remedy a number of problems associated with junk faxes, including the cost of paper and ink,

the difficulty of the recipient's telephone line being tied up, and the stress on switchboard

systems."  *Id*. (citing *Am. Copper*, 757 F.3d 540 (6th Cir. 2014).  Accordingly, the Sixth Circuit

reasoned that a plaintiff need not view or print a fax advertisement to "to suffer a violation of the

statutorily-created right to have one's phone line and fax machine free of the transmission of

unsolicited advertisements."  *Id*.  The Sixth Circuit then concluded that "Biggerstaff's report is

adequate to establish that Avio was a recipient of Alfoccino's two unsolicited faxed

19

advertisements and has standing." *Id*., at 634.

In the present action, Defendant contends that Plaintiff cannot "prove" that it suffered a harm as set forth in *Imhoff* because Plaintiff cannot evidence that it viewed the fax advertisement, printed the fax advertisement, or that the fax advertisement interrupted the use of Plaintiff's fax lines because the fax advertisement was sent on a Sunday.  (ECF No. 128, at *25.)

Defendant's argument is without merit in light of *Imhoff* and *Spokeo*.  As the Sixth Circuit noted in *Imhoff*, "the specific injury targeted by the TCPA is the sending of the fax and the resulting occupation of the recipient's telephone line and fax machine, not that the fax was actually printed or read."  *Imhoff*, 792 F.3d at 633 (quoting with approval, *Palm Beach Golf Center-Boca, Inc. v. Sarris,* 781 F.3d 1245, 1250-51 (11th Cir. 2015)).  Further, the *Spokeo* decision did not reach the issue of whether the plaintiff's alleged injuries constituted a "concrete" injury, but merely remanded the case to the Ninth Circuit for the proper analysis of "concreteness."  Here, Plaintiff has provided evidence that Plaintiff's line was occupied when the fax advertisement was sent and has also limited its proposed class to successful fax transmissions which would have occupied the telephone or fax lines.  (*See* Biggerstaff Report, at ¶ 15.)  Thus, pursuant to *Imhoff* and consistent with *Spokeo*, Plaintiff has evidenced a "concrete" injury of an "occupied" fax or telephone line that is not merely a "procedural harm divorced" from a concrete injury.  Further, as conceded by Defendant, the injury is "particularized" as to Plaintiff and the proposed class because they are alleged "recipients" of the offending fax advertisement.  (ECF No. 128, at * 24.)  Accordingly, the Court finds that Plaintiff and the proposed class have standing under Article III to pursue this action and have evidenced a "concrete" injury.

3.      Class Definition is Over-broad

Defendant notes that the Sixth Circuit had held that for faxes sent prior to August 1, 2006, there is a two-prong analysis used to determine whether a defendant has "us[ed]" a machine "to send" an unsolicited facsimile advertisement under the TCPA. *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 898 (6th Cir. 2016), 47 U.S.C. § 227(b)(1)(C). A plaintiff must evidence that a defendant's goods or services were "advertised in an unsolicited fax transmission" and also that the faxes were sent "on behalf" of the defendant. *Alco*, 822 F.3d at 898. In the present case, based upon the Sixth Circuit's decision in *Alco*, Defendant now argues that Plaintiff's proposed class definition is over-broad because the proposed class would contain a majority of people who lack a cognizable claim against Defendant because the facsimiles sent "on behalf" of Defendant are limited to the number of persons (only 300 to 400 rather than over 6,000) and the region he specified in his instruction to B2B. Thus, Defendant contends and to the extent B2B disregarded his instructions, Defendant is not liable and the class is overly-broad and Defendant's liability to the class cannot be determined using common proof.

Defendant's argument is misplaced at this stage of the litigation. Plaintiff is currently moving for class certification, yet, the issue of whether Defendant can be responsible for certain faxes or whether faxes were sent on his behalf is a question that goes to the merits of this action. It is well settled that "Rule 23 grants court no license to engage in free-ranging merits inquires at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 133 S.Ct. at 1194-95 (citation omitted). The Sixth Circuit recognizes that "district courts may not 'turn the class certification proceedings into a dress rehearsal for the trial

21

on the merits.'" *In re Whirlpool*, 722 F.3d 838, 851 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012)).

In the present action, Defendant primarily relies upon three cases to support his argument that he is not liable for any facsimiles not sent "on his behalf" and each of those cases addressed the issue in the context of a summary judgment motion: *Alco*, 822 F.3d 886 (motion for summary judgment); *Bridgeview Health Care Ctr. v. Clark*, 816 F.3d 935 (7th Cir. 2016) (motion for partial summary judgment); *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 12-80178 (S.D. Fla. Mar. 10, 2016) (attached to Def.' Supp. Mem. as Ex. E) (cross motions for partial summary judgment). In fact, in the *Palm Beach* case, the district court granted the plaintiff's motion to certify a class in a separate opinion and order, and rejected the same argument Defendant advances in this action. *Palm Beach Golf Center-Boca, Inc. v. Sarris* ("*Palm Beach II*"), 311 F.R.D. 688, 694 (S.D. Fla. Aug. 5, 2015) (holding "[b]ecause issues regarding the scope of Defendant's authorization goes to the merits of the case, the Court does not consider it at this juncture.") In *Palm Beach II*, the court went on to recognize that

> [t]he proposed class definition here is similar to those approved by numerous courts in other B2B TCPA class actions. The majority of courts to consider the issue have concluded that such a definition, supported by a report like the Biggerstaff report prepared for this case, satisfies Rule 23's implicit ascertainability and administrative feasibility requirement.

*Id.* (collecting authority); *see also Bridgeview Health Care Ctr. v. Clark*, No. 09-C-5601, 2011 WL 4628744, at *3 (N.D. Ill. Sept. 30, 2011). Further, Defendant's reliance upon *Sandusky Wellness Center v. ASD Spec. Healthcare*, 3:13 CV 2085, 2016 WL 75535, *2 (S.D. Ohio, Jan. 7, 2016) is similarly misplaced. In *Sandusky*, the district court denied the plaintiff's motion for class certification in a TCPA action because "individualized issues" predominated as to whom

the defendant "successfully sent" the facsimile. *Id*., at \*2. In the present case, however, Plaintiff has provided fax logs indicating which numbers received a facsimile and whether it was successfully sent. (*See* ECF No. 82, Ex. D, Biggerstaff Report, ¶ 15 finding that 6,142 successful fax transmissions were successfully sent to and received by 6,138 unique fax numbers, Exs. 3-5.)

In summary, the Court does not find any issue regarding the ascertainability of the class that requires the denial of class certification. The Court agrees with Plaintiff that the issue of whether the facsimiles sent "on behalf of" Defendant is a merits issue that is not relevant at this time to the proposed class definition. Moreover, the Court notes that "many courts have certified classes virtually identical to this one in cases involving the very B2B debacle at issue in this case." *Avio II*, 311 F.R.D. at 443 (collecting cases).

C.      Objections raised under Rule 23(a)

1.      Numerosity

Pursuant to Rule 23(a)(1), the numerosity requirement is satisfied when "the class is so numerous that joinder of all members [of the class] is impracticable. Fᴇᴅ. R. Cɪᴠ. P. 23(a)(1). Defendant argues in its recent Supplemental Memorandum that Plaintiff cannot satisfy the numerosity requirement of Rule 23(a)(1) because none of the putative class members were part of a timely filed class action. Thus, Defendant argues that the class contains zero potential class members. (ECF No. 128, \* 11-14.)

As examined *supra*, the Court held Defendant's argument, that the potential class members' TCPA claims are barred by the applicable four year statute of limitations, is without merit. Accordingly, Defendant's derivative argument that Plaintiff cannot meet the numerosity

requirement based on operation of the statute of limitations is rejected for the same reasons discussed above. Here, Plaintiff's evidence shows that Defendant's single-page fax was sent to more than 6,000 unique fax numbers. (Pl.'s Mot., Ex. D, Jan., 2010, Biggerstaff Report, ¶ 15.) Accordingly, the Court finds that Plaintiff has satisfied the numerosity requirement.

### 2.    Commonality

Defendant also does not make any particularized objection relating to Rule 23(a)(2)'s commonality requirement.

> Rule 23(a)(2) requires plaintiffs to prove that there are questions of fact or law common to the class.... [t]o demonstrate commonality, the plaintiffs' claims must depend on a common contention ... of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Young*, 693 F.3d at 542 (quoting *Wal-Mart*, 131 S. Ct. at 2551 n. 5).

In the present case, Plaintiff represents that there are common questions of fact regarding Defendant's fax campaign and also common legal questions under the TCPA "such as: whether Defendant's fax is an 'advertisement'; whether Defendant violated the TCPA by faxing that advertisement without first obtaining express invitation or permission to do so; whether Plaintiff and the other class members are entitled to statutory damages; and whether Defendant's acts were 'willful' or 'knowing' under the TCPA." (ECF No. 82, at *14.) The Court finds that these common questions of law and fact satisfy the commonality requirement pursuant to 23(a)(2).

### 3.    Typicality

The typicality test in Rule 23(a)(3) "'limit[s] the class claims to those fairly encompassed by the named plaintiff's claims.'" *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (alteration in *Sprague*, citation omitted). "A necessary consequence of the typicality

requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Young*, 693 F.3d at 542 (citation omitted).

Defendant argues in his second Supplemental Memorandum that Plaintiff is not a typical or adequate class representative because Plaintiff is located outside the geographic area specified by Defendant to B2B and thus, Plaintiff was not sent a fax "on behalf" of Defendant. Defendant contends that Plaintiff's "claims are subject to a unique defense: it was not sent a fax on behalf of Defendant." (ECF No. 128, at *21.) The Court finds Defendant's argument unpersuasive in light of the fact that the aforementioned defense is not "unique," and by Defendant's own calculations the defense would be common to 95% of the proposed class. (*See*, *Id.*, at *17-18, claiming only 5% of the proposed class were sent a fax "on behalf" of Defendant.) Additionally, as set forth *supra* in Section IV(B)(3), the Court finds the issue of whether the facsimile was sent "on behalf" of Defendant to members of the proposed class goes to the merits of Plaintiff's claim. *See Amgen*, 133 S.Ct. at 1194-95. Thus, this issue is not relevant to the current issue of class certification. Further, the Court finds that in the instant case there are very few relevant differences between the class members. Each potential class member is alleged to have received the same fax and each potential class member's claim is premised on the same legal theory pursuant to the TCPA. Accordingly, the Court finds that typicality requirement has been met.

4.  Adequacy of Representation

Pursuant to Rule 23(a)(4), the court must find that the "representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Sixth Circuit has held that there are two criteria for determining the adequacy of representation: "1) the

representative must have common interests with unnamed members of the class; 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *In re Am. Med. Sys. Inc.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).  Additionally, under Rule 23(g)(1), a court that certifies a class must appoint class counsel.  FED. R. CIV. P. 23(g)(1).

        a.     Class Counsel

Defendant argues that Plaintiff's proposed class counsel, specifically Anderson + Wanca, while experienced, fails to satisfy the requirements of Rule 23(a)(4) and 23(g)(1)(b) because their lack of integrity and questionable solicitation practices raise serious questions regarding their "trustworthiness, loyalty to the class and overall ability to fairly and adequately represent the interest of the class members."  (Def.'s Resp., at 6.)

Rule 23(g) provides that when appointing class counsel a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," "counsel's knowledge of the applicable law," and "work counsel has done in identifying or investigating potential claims in the action."  FED. R. CIV. P. 23(g)(1)(A)(i)-(iii),(B).

Here, Defendant argues that based on the very documented and highly dubious practices of Anderson + Wanca in establishing its infamous TCPA class action empire, those attorneys cannot be found to be adequate class counsel under the Federal Rules.  Defendant notes that other courts have found Anderson + Wanca's behavior "demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class" and that there was "no basis for confidence that they would prosecute the case in the interest of the class, of which they are the fiduciaries."  *Creative Montessori Learning Ctrs. v. Ashford Gear, LLC*, 662 F.3d

913, 917 (7th Cir. 2011) (remanding to the district court with instructions to re-evaluate "the gravity of class counsel's misconduct and its implications for the likelihood that class counsel will adequately represent the class.").

The Court finds the Seventh Circuit's treatment of the issue in *Reliable Money Order*, 704 F.3d 489 (7th Cir. 2013) persuasive.  In *Reliable Money*, the Seventh Circuit elucidated the standard that "unethical conduct, not necessarily prejudicial to the class, nevertheless raises a 'serious doubt' about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case."  *Id.* at 499, 502 (ultimately deciding that the conduct of Anderson + Wanca did not rise to this level and declining to find "those lapses in professionalism undermine the district court's ability to decide the case" but emphasizing "concern over the challenged actions that Anderson + Wanca attorneys have taken while investigating this case and others.").

In the present case, while the Court acknowledges that the actions of Anderson + Wanca have been questionable in the past, the Court finds that denial of certification on those grounds is not warranted.  In the present case, there is more than one attorney and firm seeking to be appointed as class counsel.  Indeed, the Court finds that Jason J. Thompson with Sommers Schwartz, P.C. and Tod Lewis and Phillip Bock with Bock, Hatch, Lewis & Oppenheim, LLC were not related or associated with the earlier misconduct and are all qualified as class counsel. This result has been reached by other courts in analogous cases.  *See e.g., Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 09-cv-14444, 2016 WL 1394649, *14 (E.D. Mich. Apr. 7, 2016) (appointing Phillip Bock and Jason Thompson as class counsel in analogous TCPA case); *Sandusky Wellness Ctr LLC v. Wagner Wellness, Inc.*, No. 3: 12 CV 2257, 2014 WL 6750690

27

(N.D. Ohio Dec. 1, 2014) (Katz, J.) (certifying the class and finding that local counsel had not been "tainted" by the allegations of misconduct.); *cf. Am. Copper & Brass, Inc. v. Lake City Indus. Prods. Inc.*, No. 1:09-CV-1162, 2012 WL 3027953, at *6-7 (W.D. Mich. July 24, 2012) (Quist, J.) (finding Anderson + Wanca and Bock & Hatch had adequate experience "for better or for worse" in TCPA actions).

b.    Named Plaintiff

To determine the adequacy of representation under Rule 23(a)(4), "the representative must have common interests with unnamed members of the class." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Here, Defendant appears to argue that Plaintiff Compressor Engineering is not a proper representative because Plaintiff is merely a "pawn" of its attorney. Additionally, Defendant notes that Plaintiff's president, Berwick, has no memory of the fax at issue, did not retain the fax, or the fax machine that allegedly received the fax. Defendant argues that this amounts to spoliation of the evidence and would entitle Defendant to a unique defense against the Plaintiff.

Rule 23 and case law mandates that a class representative share "common interests" with the unnamed class. Here, Plaintiff, just like the unnamed members of the proposed class, allegedly received an unsolicited fax from Defendant. Critically, Defendant has failed to cite to any case law from the Sixth Circuit holding that a possible unique defense would render a party an inadequate class representative. Additionally, as noted *supra*, the Sixth Circuit has held that a person or entity has statutory standing to assert a violation of the TCPA regardless of whether they viewed or printed the fax advertisement. *Imhoff*, 792 F.3d at 633; *see also Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 184 (E.D. Pa, Mar. 31, 2014) (noting "defendants have not

28

provided, and I am not aware of any, authority establishing an requirement that a recipient or a

recipient's representative (in the case of a business-entity recipient) have direct personal

knowledge of the individual fax transmission involved in an action under the TCPA"); *Reliable*

*Money Order, Inc. v. McKnight Sales Co., Inc*., 281 F.R.D. 327, 333-34 (E.D. Wis., Mar. 30,

2012) (finding that the named plaintiff was an adequate representative when "the potential class

members likely have no personal knowledge of whether the 'junk fax' at issue in this case was

successfully sent.").

Additionally, Defendant has not shown that Plaintiff's interests or claims do not align

with the unnamed members of the proposed class.  Rather, Plaintiff, through its representative, is

involved in the litigation process and has expressed his general displeasure in  receiving the junk

faxes.  (*See* Berwick Dep. at 12).  Thus, Plaintiff does not appear to be merely a pawn of his

attorneys.

As an aside, the Court notes that Plaintiff's proposed definition of the class does not

include "entity" but only the word "person."  The TCPA allows both a person or an entity to

recover damages.  Here, the named Plaintiff is not a "person" but rather an "entity" and therefore

could not technically be part of the named class that it is said to represent.  This is a easy

revision to the class definition, however, and not a reason to deny certification.  *See Compressor*

*Eng*., 292 F.R.D. at 445 (noting the same).

D.     Rule 23(b)(3) Requirements

Defendant next argues that Plaintiff has failed to establish that it meets the predominance

and superiority requirements of Rule 23(b)(3).  Rule 23(b)(3) provides that "matters pertinent" to

finding that questions of law or fact common to class members predominate over any questions

29

pertinent to individual members and whether the class action is superior to other methods of

adjudication include: (A) "the class member's interests in individually controlling the

prosecution or defense of separate actions," (B) the extent and nature of any litigation

concerning the controversy already begun by or against class members," (C) "the desirability or

undesirability of concentrating the litigation of the claims in the particular forum," and (D) "the

likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3)(A)-(D).

1.      Predominance[5]

The Sixth Circuit has explained that "to satisfy Rule 23(b)(3), named plaintiffs must

show, and district courts must find, that questions of law or fact common to members of the class

predominate over any questions that affect only individual members." *In re Whirlpool*, 722 F.3d

at 860 (citing *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, --- U.S. ---, 133 S. Ct. 1184,

1195-96 (2013)). "[T]he predominance inquiry must focus on common questions that can be

proved through evidence common to the class. A plaintiff class need not prove that each element

of a claim can be established by classwide proof: 'What the rule does require is that common

questions 'predominate over any questions affecting only individual [class] members.'" *Id.* at

858 (internal citation removed) (citing *Amgen Inc.*, 133 S. Ct. at 1195-96).

Defendant argues common questions of law and fact do not predominate in this action

because the Court would be forced to make a number of "individual inquiries" that would

---

[5] The Court notes that while Defendant asserts that it is objecting to "commonality," he actually sets forth a Rule 23(b) analysis. Therefore, the Court addresses these issues in the context of Rule 23(b). *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (explaining "[s]ubdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues).

degenerate into a series of individual trials.  Defendant's list of possible individual inquiries

include: (1) whether Defendant had an ERB with each potential class member; (2) whether the

fax transmissions were actually received (there may be "false positives" and lack of "trace

logs"); (3) whether the potential class members were in existence at the time of the facsimile

transmission or at time of the lawsuit being filed; and (4) whether the facsimile was sent to an

email rather than a fax machine.

First, to the extent that Defendant asserts that Plaintiff cannot show predominance

because Defendant may have had an ERB with the class member or because the fax numbers

may correspond to businesses that were or are no longer operating, those arguments have been

addressed *supra* in Section IV, Subpart B(1), in relation to the class definition and are

unpersuasive.

Defendant also relies upon its expert, James Ray Horak, for the proposition that the Court

would have to make individual inquiries regarding whether the facsimile at issue was

"successfully sent" because there may be "false positives."  (Def.'s Resp., Ex. Q, Horak Report.)

Horak opines that B2B used HylaFAX 4.2.1 software to broadcast the fax at issue, and the

HylaFAX confirmation does not account for "false positives" when faxes are reported as

delivered but nothing is received.  (Horak Rept., at ¶¶ 34-38.)  Horak further opines that

tracelogs would help evidence any "false positives" but that none were produced by Plaintiff in

this matter.  Defendant also relies on Horak for the proposition that the Court will need to make

an individual inquiry as to whether the machine that received the fax was a telephone facsimile

machine as defined by the TCPA.  (Def.'s Resp. at 15.)

First, as to the issue of "false positives" the Court finds Horak's opinion unpersuasive.

31

The TCPA provides that it is unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C) (emphasis added).  Other courts have found that on its face, the TCPA does not require that a facsimile be received, only that it be sent.  *See Am. Copper & Brass, Inc. v. Lake City Ind. Prods., Inc*., (*Am. Copper I*), No. 1:09-CV-1162, 2013 WL 3654550, *4 (W.D. Mich. July 12, 2013) (Quist, J.), *aff'd by* 757 F.3d 540 (6th Cir. 2014); *see also Hinman v. M and M Rental Ctr., Inc*., 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2009).  Additionally, Horak's opinion has been scrutinized in this district and others as being "unpersuasive," "speculative at best," and found to fail to help a defendant meet their burden at the summary judgment stage.  *See Am. Copper I*, 2013 WL 3654550, *4; *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, *2-3 (E.D. Mich. Nov. 8, 2013) (Cook, J.) (striking Horak's expert opinion because his opinions were "factually unsupported, legal conclusions, or irrelevant"); *see also Chapman v. Wagener Equities, Inc*., 09 C 07299, 2014 WL 540250, *10 (N.D. Ill. Feb. 11, 2014) (granting motion to certify and rejecting defendant's same arguments regarding "false positives" as set forth by Horvak and concluding that such evidence was reliable where the defendant could not demonstrate a single entry in the logs was actually inaccurate.).

In the instant case, Horak has not cited to any particular instance where a transmission that is logged by B2B records as sent was actually falsely recorded.  Given these facts, and the fact that the Sixth Circuit has found that this exact information is reliable in both *American Copper* and *Imhoff*, the Court finds Horak's opinion unpersuasive on the issue of whether this Court would be forced to make individualized inquires regarding the accuracy of the faxlog.

32

Defendant also relies upon Horak's opinion to argue that the Court will need to make individual inquiries regarding whether each potential class member used a device that fell within the scope of the TCPA because either (1) the facsimiles were sent over Vonage telephone lines that do not constitute "regular telephone lines" under the TCPA or (2) some of the facsimiles were sent as emails.[6]

> In *American Copper I*, the district court explained:
>
> [r]egarding Horak's opinion about which devices fall within the scope of the TCPA, the Court agrees that "this is a potentially complicated issue, since the TCPA does not define the term 'regular telephone line,' and cases and other authorities are silent on the question." Indeed, although unsolicited faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers do fall within the TCPA's prohibitions, "that prohibition does not extend to facsimile messages sent as email over the Internet." 18 F.C.C.R. at 14133. However, "a conventional standalone machine is just one device used ... developing technologies permit one to send and receive facsimile messages in a myriad of ways .... The TCPA's definition of telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a 'telephone facsimile machine' have the 'capacity to transcribe text or images' is to ensure that the prohibition on unsolicited faxing not be circumvented." *Id.*

*Am. Copper I*, at *5 (internal citation omitted).

In the present case, Defendant does not claim that the fax machines used to broadcast the transmissions were not within the TCPA's definition of a telephone facsimile machine and Horak only "speculates" that other machines were used (on the recipients' end). Further, Defendant failed to cite any legal opinion or authority supporting its interpretation (and Horak's) regarding what a "regular telephone line" is under the TCPA. Indeed, while Defendant argues

---

[6] It is clear that the FCC has declared that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. However, we clarify that the prohibition does not extend to facsimile messages sent as email over the Internet." 18 FCCR 14014 at *14133 (July 3, 2003).

33

without citation that the Junk Fax Protection Act "indicates a clear distinction between a telephone facsimile machine, a computer and other device" (Def.'s Resp., at 15), in reality, the FCC has concluded that "because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it." 18 FCCR 14014 at *14133-34 (July 3, 2003); *see also Am. Copper I*, at * 5 (relying on the same reasoning to reject Horak's opinion). Significantly, if the Court does need to *legally* define what constitutes a "regular telephone line" under the TCPA, such a question would be a common question as to all potential class members's claims. Therefore, such an issue is not fatal to class certification and can be addressed, if needed, later in the litigation.

Accordingly, Defendant's arguments that common issues of fact and law do not predominate are unavailing. Rather, the Court finds that "[c]lass certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Turza*, 728 F.3d at 684.

### 2.    Superiority

Defendant argues in his Response that a class action is not the superior method for adjudicating the claims in this case because Congress intended these claims to be adjudicated in small claims court. (Def.'s Resp., at 16.) This argument is unpersuasive. While it may be true that plaintiffs' firms received a boon in pursuing these class actions on behalf of plaintiffs who do not remember the injury (and never would have pursued the action but for a solicitation letter); it is unrebutted that there are some 6,000 potential class members in this action. It is not

logical to believe that having 6,000 individual lawsuits (whether in state court or federal court) would be more efficient or a better use of judicial resources.  *See Chapman v. Wagener Equities, Inc.*, 09 C 07299, 2014 WL 540250, *16 (N.D. Ill. Feb. 11, 2014) (finding that the superiority requirement was satisfied where there were more than 10,000 potential class members, "[w]ith that large number in mind, it is impossible to imagine individual lawsuits; disposition by class action is certainly, in this case, an efficient use of judicial resources."); *see also Avio II*, 311 F.R.D. at 446 (finding class action a superior method in an analogous TCPA case).  For all these reasons, the Court finds that a class action is a superior method for litigating these 6,000 potential claims.

## V. CONCLUSION

For all these reasons, the Court GRANTS Plaintiff's Motion for Class Certification and Appoints Class Counsel, Jason Sommers, Philip Bock, and Tod Lewis (ECF No. 82).  The Court also GRANTS Plaintiff's Unopposed Motion for Leave to File Recent Sixth Circuit Authority (ECF No. 92); DENIES Defendant Thomas' Motion for Leave to File Supplemental Memorandum (ECF No. 96); GRANTS  Plaintiff's Motion for Leave to file Supplemental Authority (ECF No. 99); and GRANTS Plaintiff's Motion for Leave to File Supplemental Authority (ECF No. 110).

IT IS SO ORDERED.


s/Paul D. Borman                                    
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 29, 2016

35

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or
party of record herein by electronic means or first class U.S. mail on December 29, 2016.


s/Deborah Tofil
Case Manager